May it please the Court, Ryan Groff for Appellant and Cross Appellee, Margrit Meier doing business as the Hartland Inn. The issue in this case is whether the District Court erred when it refused to apply Wisconsin substantive law, the Wisconsin substantive law of Coppins, to this matter. It's Meier's position that the District Court did... Is there any law in Wisconsin that forbids parties from agreeing to use the broad evidence approach? Ask that again. I'm sorry. Does any law in Wisconsin prevent parties from agreeing to use the broad evidence approach? No. So this is all a matter of contract? Yes, Your Honor. And that's presumably what is going on in this process. Appraisal is a form of arbitration, and we think of the arbitrators as the party's contractual agents, and they've decided to use this approach. So you've already told me that Wisconsin doesn't forbid parties from agreeing, and the appraisers act for the parties. What's left? The appraisers are bound by the contract, Your Honor. This is a matter of contract interpretation, and what Coppins tells us in the clearest terms... You know, we have a lot of cases involving both appraisal and arbitration, and we say over and over that the appraisers or the arbitrators are the ones who fill out the lacunae in a contract, that they can do whatever the contracting parties can do, provided they don't contradict the contract. And you're not arguing that the use of the broad evidence approach contradicts the contract. That's precisely our argument, Your Honor. What in the contract forbids its use? Why does it forbid its use? Because Coppins... No, what in the contract forbids its use? What language in the contract forbids its use? You see, if it's forbidden by the contract, then Wisconsin law is irrelevant again. You've just agreed that Wisconsin law leaves it to the parties. So we need to figure out what the contract... If the contract forbids the use of this rule, then the appraisers can't use it. But if it doesn't forbid the use of this approach, then it's up to the appraisers. So what language in the contract forbids the use of the broad evidence approach? The fact that the contract says, number one, that depreciation is going to be involved in calculating the replacement cost, which by definition means actual cash value takes into account the depreciation. Again, what the Coppins court held was that the traditional... No, we're not... I didn't ask you about what some state court held. I asked you to point to language in this contract that forbids the use of the broad evidence approach. Well, the question when you're interpreting contracts is a little different, which is the reasonable interpretation of the insured. And that's why Coppins is so important, because the reasonable interpretation... Look, I just want you to understand that I take from your approach that the answer is no language in the contract. Does the contract specifically say you cannot use the broad evidence rule? No, it does not. And again... Is there anything that by necessary implication means that? The example I just gave you, which is they define replacement cost as including depreciation, which by implication defines actual cash value to include depreciation. It is not some market analysis of the market value of the property. And you're focusing, Your Honor, on the appraisal provision of it, which I understand. But again, getting back to Coppins, which is the substantive law that the district court was required to apply here, Coppins went through this analysis. And what the Coppins court said was if you're going to use the broad evidence rule to calculate actual cash value, you have to put the insured on notice to that in the contract. And the Coppins court also looked at the traditional measure of actual cash value. That's not how I read Coppins. I don't read it as saying you have to put it on notice. I read Coppins as saying the actual cash value had a specific definition in the contract there. And using the best evidence would have contradicted that. Well, Coppins also relied upon the website of the insurance company that defined actual cash value using replacement cost minus depreciation. But there's nothing in Coppins, and if I'm wrong, please point me to it, that says you have to give notice if you want to use the best evidence. Well, what Coppins says is if you want to use broad evidence, which is ‑‑ Broad evidence. I'm sorry. I don't see anything. What the Coppins court said is that a policy that does not indicate the use of broad evidence, if the policy does not indicate a use of broad evidence, which is market value and things of that nature, then you default to the traditional way to calculate actual cash value, which is replacement cost minus depreciation. And one thing you didn't see in the briefs because this was dismissed and a motion to dismiss is insurance companies can buy broad evidence endorsements that specifically tell an insurer when we calculate actual cash value we will use the broad evidence rule or we will use fair market value. And Coppins recognized that. And, again, consistent with the reasonable expectations of the insurer. Do you agree that the contract at issue here has different language than the contract at issue in Coppins? I do. But, again, Coppins didn't just rely upon the language in the contract. Coppins relied upon the Office of Commissioner of Insurance's definition of actual cash value. Was there anything on the insurer's website here that defined actual cash value to preclude the use of the broad evidence rule? So this is somewhat of a factual issue, but IMT Insurance Company is the parent company or some company associated with Wadena Insurance Company. Wadena Insurance Company doesn't have a website. If you Google Wadena Insurance Company, it takes you to the IMT website, which is where they define actual cash value as replacement cost minus depreciation. Wadena makes the argument that IMT and Wadena are separate. But if you look at the insurance policies in our appendix, they say IMT on them. If you look at the letter sent by the adjuster with his broad evidence calculation, it's on IMT's letterhead. If you look at the declaration of appraisal drafted by Wadena Insurance Company, they use IMT and Wadena interchangeably. So I don't think a reasonable person would look at the IMT website and make the distinction that Wadena is trying to make, especially since they interchange so much. Mr. Graff, are you saying that after Coppins, I don't think you are, but after Coppins that the use of the broad evidence rule is illegal? Yeah, I have been accused of that. I have never said that. I'm not accusing you. The reason I'm asking you the question is I think that can't possibly be your position. No. But, and this is a big but, the Wisconsin Supreme Court, going back to 1954, has acknowledged the broad evidence rule in ways that are more endorsing of it. Right? So then Coppins, as an intermediate court decision, it can't possibly overrule a state Supreme Court decision. No. Right? So your position has to be that it limits it somehow. What's the limitation? The limitation recognized in Coppins was those older cases all involved very unique circumstances. The Coppins court spent time distinguishing that and said those cases did not involve an insurance contract where there was actual cash value being calculated pursuant to a contract. And to get to the intermediate court. That just seems it would, that, what I, you're not using these words, I am, but that seems to be saying so in kind of modern times its application is illegal. No. Absolutely not. The broad evidence rule can be used as a rule of evidence in trial courts when you're dealing with the types of things dealt with in those earlier cases. So, for example, valuing a brewery during prohibition. Well, then you're going to consider everything. Valuing alligator shears that have no active market. Then you're going to look at everything. What the Coppins court said is we are not getting rid of the broad evidence rule. What we're saying is if an insurance company wants to use the broad evidence rule to calculate actual cash value, they need to put something in their policy to let the insured know. And that's consistent with the reasonable expectations of the insured. At no point did I argue that Coppins is illegal, or Coppins, that the broad evidence rule is illegal and can't be used anymore. But in the particular circumstance where you're calculating actual cash value based upon an insurance policy, the reasonable expectations of the insured, and I think that's pretty consistent amongst jurisdictions, that controls. So, and to the point, Coppins, the Supreme Court of Wisconsin, had the opportunity to review Coppins, and they declined. You know what's odd to me about this, and you can tell me it shouldn't be, is I look at this case and your client got about 85, between 85 and 90 percent of the limits of the policy. I think, isn't that a complete victory? No. Really? No. Because Wadena Insurance Company created an estimate, an actual cash value estimate, using replacement cost minus depreciation, clearly, pretty near the outset of the case, and instead of paying that, they paid the broad evidence. They should have paid the policy limits years ago. Yeah, but the broad evidence resulted in a pretty handsome payout. I mean, it's 85 to 90 percent of the limits of the policy. Right. It's just odd to me that the whole thing is being litigated, and I know that doesn't resolve the appeal, but I thought, what are we litigating over? There's probably a lot there. This happens to be an incredibly important issue in the state of Wisconsin because there is a certain segment of insurance companies that use the broad evidence rule to underpay claims. Again. So is that to say there's, in your circles, I mean, you do this, right? Right. I think there, in your circles, there's quite a tangle about how to interpret this case called Coppins. I have. Visibly the older Wisconsin, so. No, I have a number of cases on this where the circuit courts of Wisconsin went the exact opposite way the district court. But here, Your Honor, let me address the issue or the problem. When that estimate was created that was over the policy limit, Margaret Meijer should have been paid that policy limit. She shouldn't have had to go to appraisal. She shouldn't be here fighting her insurance company. They should have, consistent with Coppins and consistent with the estimate that they themselves created, saying that the actual cash value, if they used replacement costs minus depreciation, would have resulted in a policy limit payment to her. The only reason the broad evidence rule was used was to lessen their obligation to their insurance. So that's why we're here litigating it, even though. I knew that there had to be some kind of bigger fish frying in the backdrop. Well, the other bigger fish frying. The other question, though, is why you are here. Why aren't you in Wisconsin courts? I tried to file in Wisconsin courts, and they removed me to federal court. You haven't asked for a certification. What's that? You haven't asked for a certification. You seem to want the final answer to come here, but, of course, we can't finally answer any question of Wisconsin law. Well, I think if you look at the cases in Wisconsin, in particular the case I cited in my brief, Cook v. Cook, an unchallenged, published court of appeals decision is the law of the state. So I think the question has been answered as it relates to Wadena's insurance company's ability to use the broad evidence rule here. And I'm going to ask you one quick question before you sit down. You've got to help me and your colleague will, too. The insurance regulatory authorities in Wisconsin, have they offered a view on the application of this rule post-Koppins? They have not offered a view on Koppins. Because it would just seem to me that this is prime space for some input, you know, from the insurance regulator, too. I would agree and disagree. I would disagree. I think Koppins is pretty clear. Okay? I don't know that we need clarification. Now, what I would say is the Koppins court. It would be unclear if there's a big tangle going on in these circles in this litigation in Wisconsin. If you've got a whole bunch of other cases that you say, well, this outcome here means a lot to those cases. Because this outcome is drastically inconsistent with the other outcomes I've received in Wisconsin state courts. But to your point about has the insurance commissioner spoken on any issue, again, Koppins did. The Koppins court relied upon the office of commissioner of insurance definition of actual cash value on their website. To say a reasonable insured would understand that that is what actual cash value is. And let me briefly, I'm going to not reserve much time here. The bigger fish to fry, Judge Scudder, is bad faith. I mean, it's the claim that comes after, which is bad faith insurance practices. I see. Okay. Thank you. Thank you, counsel. Good morning. May it please the court. My name is Ron Pezzi. My associate, attorney Navarrete, is here as well. He's a co-author of the briefs. Let me get to the biggest fish here. Simply put, Widena's policy provided for repair replacement costs if the insured, in fact, did repair or replacement. If the insured elects not to do any repair or replacement, the policy simply puts that then you get actual cash value. This is because, like this building that we're talking about, is an old, old building, and the repair or replacement could far exceed what the building is worth. So to keep rates reasonable, it's set up that way. In this case, nowhere in his brief, nowhere in his conversation does he reference the undisputed fact that this building was sold. It's not being done as business as a Hartford Inn. The building was sold. The fact that it was sold is expressly referenced in Umpire Marski's analysis and decision appellate record number 32. So in this case, because the building was sold, because it was never repaired, because it was never replaced, the case involves actual cash value. What's the measuring stick, right? In 1968, the Wisconsin Supreme Court, in the Duliger case, addressed a fire policy where actual cash value was not expressly defined in the policy. The Supreme Court stated at that time that it had consistently followed the broad evidence rule. In Duliger, the court stated that the broad evidence rule gave considerable leeway and latitude to consider, in the particular case, all facts reasonably tending to throw a light on the subject. The broad evidence rule gives you a chance to look at everything, including the cost of repair and replace. What happened here? If you look at the umpire's analysis and appraisal, which ultimately was accepted by Wadena's appraiser and became the appraisal award, he included two repair and replace analyses, one done by their appraiser and another one. In fact, if you look at the numbers, which is the calculation is appellate record number 31, it skewed the actual cash value higher because the numbers were so great for repair and replacement that it made the ultimate value for actual cash value higher. So the fish that's looking to be fried here, Judge, is a lawyer that does bad faith litigation. I don't think continually pointing at your adversary is a good thing to do. I will take that hint, Judge, and it won't happen again. So the fish here, Judge, is you're right. I think that the payment was reasonable in this case. The award was found by an appraiser that was selected by the appraisers that were selected by the parties, including the appraiser for Ms. Meyer. In fairness, though, to Mr. Graff, do you agree that Coppins imposed some limitations on the application of the broad? Absolutely not. There is nothing in the Coppins decision that the broad evidence rule was no longer used in Wisconsin. No, no, no, no. Okay. But he acknowledged, Mr. Graff acknowledges that, right? So he's very quick and candid to say, no, no, I'm not arguing it's illegal. Okay. The question is, did Coppins impose some limitations? And if the answer to that is yes, what are they? It did not, Judge. And as the district court found, the Coppins case, the facts of the Coppins case, the policy language in the Coppins case is not the same as the Wadena policy. And the district court found that the farmer's case, the Supreme Court case, is more on fours than the Coppins case with this one. I can go through the differences between the policy, the state farm policy in Coppins, and the Wadena policy, and they're paramount and they're significant. I wholeheartedly agree that the court of appeals correctly found that the appraisal process with that policy and in that case went off the rails. I mean, look at it, Judge, where the all-state adjuster found the actual cash value to be $113,000, and all-state refused to accept that. In this case, the Wadena adjuster, using the broad evidence rule, found that the value is $832,000, and we paid that immediately. You would agree that some courts have interpreted Coppins differently? I am not aware of any court decision that, other than Judge Ludwig's decision in the district court, where Coppins was interpreted or interpreted in the manner which is suggested by counsel. Well, you would agree that courts have certainly given different interpretations of Coppins and the impact of it on the broad evidence rule, whether precisely with what Mr. Graff is arguing or not. I have seen in the circuit courts that courts have struggled interpreting Coppins. Given that, how could it have been an abuse of discretion for the district court here to deny your motion for sanctions, given that courts have relied on Coppins differently? My sanctions is based upon the premise, Judge, that the issue of the debatability of Coppins, at least, is fairly debatable, and there should be no bad faith claim when the issue of law is fairly debatable. Attorney Graff lost his Coppins argument in the first federal law case that he filed, where Judge Ludwig pretty clearly stated that Coppins did not prohibit use of the broad evidence rule by the appraisers. We go to the appraisal process, and the appraisers use the broad evidence rule. He starts a second lawsuit that brings us today, claiming bad faith. How can there possibly be bad faith? How can he possibly argue that it's not, at a minimum, fairly debatable, when in this case and this policy, Judge Ludwig told him that Coppins didn't prohibit use of the broad evidence rule? So what, the bad faith claim is in a second lawsuit that's pending or something? In the second lawsuit, Judge, I moved for sanctions for the bad faith and the breach of contract claim. Judge Ludwig dismissed the entire case, and he exercises discretion to not award any sanctions for the frivolous claims of breach of contract and bad faith. And I guess that's my question. How could the breach of contract be frivolous here, given that some courts have interpreted Coppins differently? But the legal standard for bad faith is whether their position is fairly debatable. There's two things to look at, whether- You just said, I'm asking about the breach of contract, because you just said the breach of contract claims were frivolous as well, and that's what you base sanctions on. How could that be frivolous in light of the differing ways that courts have interpreted Coppins? Well, my focus of my frivolity motion is on the bad faith claim, but the breach of contract claim, in my opinion, is also frivolous. What did Dena do here? Their adjuster adjusted the case, adjusted the claim, paid $850,000. They went to the appraisal process was invoked. Instead of following through it, she breached the policy by not going through the appraisal process. When we got to the appraisal process, we had an appraiser. The appraisers hired an umpire. The umpire came up with an amount. We agreed with that amount, and we paid it. Where's the breach of contract? There's no evidence to even support an argument that Dena breached its contract in this case. Are these broad evidence rule cases? There's something else going on here. I don't know what it is, but are these broad evidence rule cases, cases that come in under the limits a lot of times for the insurance companies? Is that what this fight is about? She got a pretty big percentage of this policy. She did, and in Coppins, the insured got 30% of the policy limits. There's a lot of problems with the way Allstate handled the case, and that's why the Court of Appeals overturned it, and I can list those problems that have nothing to do with our case. The Coppins policy, the Allstate policy, had language in the policy that indicated that a replacement or repair analysis would be performed, including an endorsement that provided more money for code compliance. Code compliance is only relevant if the building is going to be repaired and is required to be upgraded to current codes. So the policy and what the insurance company did in Coppins is completely distinguishable, and the district court recognized that and said this is really a case like Farmers where we're simply reviewing the giving of an appraisal award. The proper standard of review, of course, for an appraisal award is that there's deference given to it, and here there's no evidence, there's no indication in any way, shape, or form that Umpire Marski, whose appraisal ultimately became the appraisal award, didn't understand what he was doing. In the Coppins case, they failed to even indicate the appraisal award was actual cash value. In this case, Umpire Marski's appraisal award specifically states that it was an actual cash value conclusion. He attached to the appendix is the analysis he performed for actual cash value, and it so states. And unlike the Coppins case, two analysis of repair or replacement value were included by Umpire Marski. In the Coppins case, they ignored that to arrive at a lower number focusing on market value. The analysis performed by Umpire Marski in this case doesn't focus on market value. And again, Judge, what this is all about is what he wants to argue is the actual cash value, which is what is at issue here, was paid. What he wants is to receive the repair or replacement value when it was never repaired, it was never replaced, it was sold. And he doesn't even reference that fact in his brief. I have nothing further. All right. Thank you. Thank you, Counsel. Anything further, Mr. Grant? My 52 seconds. Judge Scudder, to your point, Mr. Pezzi tries to distinguish Coppins and he says there's no ordinance and law coverage here. Yes, there is. There's ordinance and law coverage in the Wadena policy, just like the Allstate policy. He also said the adjuster in Allstate created a replacement cost minus depreciation estimate of $100,000, but they only paid $30,000. Here, the adjuster created a replacement cost minus depreciation actual cash value estimate that exceeded the policy limits. So we are here because if Wadena would have followed its policy and would have followed Coppins, Margaret Meyer would have gotten the one point. What do you do about his point that the policy seems to say that replacement, I mean just expressly seems to say replacement cost is not going to be paid unless you make repairs? We're not here making a replacement cost argument. That is a red herring. So this is how insurance works. You have replacement cost. I think we know how insurance works. Well, I apologize for. Your time has expired. Thank you. Unless you have a further answer to Judge Scudder's question. So there's either replacement cost policy. No, you're going to give us a lecture about how insurance works. Your time has expired. Oh, thank you. Case is taken under advisement. Our next case.